IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-CV-2843

**MICHAEL ALLYN KING,**

    Plaintiff,

v.

**ADAMS COUNTY DEPUTY SHERIFF GILBERT ABDULLA,** in his individual capacity,
**DENVER POLICE DEPARTMENT OFFICER JAY LOPEZ,** in his individual capacity,

    Defendants.

---

**COMPLAINT FOR DAMAGES AND JURY DEMAND**

---

Plaintiff, Michael Allyn King, by and through counsel, Anthony Viorst, of the Viorst Law Offices, P.C., hereby brings this complaint for damages and jury demand under 42 U.S.C. § 1983 to redress his civil and legal rights, and alleges as follows:

**INTRODUCTION**

1. This is a civil rights action for damages and other relief in which the plaintiff, Michael Allyn King, seeks relief for the defendants' violation of his rights secured by The Civil Right Act of 1871, 42 U.S.C. § 1983, by the United States Constitution, including its Fourth and Fourteenth Amendments to the United States Constitution. Defendants Jay Lopez and Gilbert Abdulla violated the rights of Michael Allyn King under the Fourth and Fourteenth Amendments to the United States Constitution, when Defendant Jay Lopez provided false information to Defendant Abdulla, which led to the unreasonable use of force without lawful justification, of Michael Allyn King, by means of a canine unit controlled by Defendant Gilbert Abdulla, on or

about August 23, 2016. The Defendants' conduct under color of state law proximately caused the deprivation of Plaintiff's federally protected rights. The Defendants' conduct was done willfully and wantonly or with reckless disregard of Plaintiff's rights and feelings. Plaintiff seeks compensatory and punitive damages, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems proper and just.

## JURISDICTION AND VENUE

2. This action arises under the Constitution and laws of the United States, and is brought pursuant to Title 42 U.S.C § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 and 1343.

3. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado.

4. Plaintiff has satisfied all conditions precedent to bringing this action.

## JURY TRIAL DEMANDED

5. Plaintiff demands a trial by jury on these claims as pleaded herein.

## PARTIES

6. At the time of this incident, Plaintiff Michael Allyn King ("Mr. King") was a resident of the State of Colorado, residing in Adams County, Colorado.

7. At all times relevant to the subject matter of this litigation, Defendant Gilbert Abdulla ("Defendant Abdulla") was a citizen of the United States, a resident of Colorado, and was employed by the Adams County Sheriff's Department in Colorado.

8.     At all times relevant to the subject matter of this litigation, Defendant Jay Lopez ("Defendant Lopez") was a citizen of the United States, a resident of Colorado, and was employed by the Denver Police Department in Colorado.

9.     At all times relevant hereto, Defendant Lopez and Defendant Abdulla, sued in their individual capacities, were acting within the scope of their official duties and employment, under color of state law.

## FACTUAL ALLEGATIONS

10.    On August 23, 2016, at approximately 1:53 p.m., Adams County Sheriff's Deputy Abdulla arrived at 8358 Shoshone St., Denver, CO 80221 in Adams County and met with Defendant Lopez outside of Mr. King's residence.

11.    Defendant Lopez told Defendant Abdulla that Mr. King was inside the house and had an outstanding arrest warrant for a violation of a protection order. Defendant Lopez additionally told Defendant Abdulla that Mr. King was contacted earlier that week with a handgun in his possession and that Mr. King had threatened to kill his girlfriend.

12.    Defendant Lopez was aware, and he informed Deputy Abdulla, that Mr. King was currently suffering from Stage IV colon cancer.  Deputy was aware, but did not tell Deputy Abdulla, that the alleged protection-order violation had occurred weeks earlier.

13.    Defendant Lopez knocked on the front door of Mr. King's residence for 5-10 minutes until he asked Defendant Abdulla to get his canine unit and enter Mr. King's residence.

14.    Defendant Abdulla made announcements into the house for Mr. King to come out with his hands up or he would send the dog in and Mr. King would get bit. These announcements were made at the entrance to the house.

15. Two males came out of the house and told Defendant Abdulla that they believed King was in the house and that Defendant Abdulla had permission to enter the house. However, the males also informed the officers that Mr. King rented his room, which essentially a private apartment.

16. Defendant Abdulla entered the house with another Deputy, Deputy Kyle Michieli. Deputy Michieli and Defendant Abdulla stood at the top of the stairs to the basement and sent the canine down into the basement. There were several bedrooms in the basement and the canine went up to one of the closed doors and began to bark and jump at the door.

17. At the closed door, Defendant Abdulla announced for Mr. King to come out of the bedroom. However, Mr. King was in the bathroom adjacent to the bedroom, and did not hear this announcement. Defendant Abdulla and Deputy Michieli kicked the door down and without looking into the bedroom, or the bathroom, or announcing their presence, sent the canine into the bedroom/bathroom area to bite whoever was inside.

18. Attached to the bedroom was a bathroom where Mr. King, sick with stage four colon cancer, was sitting on the toilet vomiting into a garbage can. Mr. King did not know the deputies were in his house and was not able to hear their announcements from behind the closed bedroom door due to his active vomiting while being sick with stage 4 colon cancer.

19. The canine, controlled by Defendant Abdulla, entered through the bedroom into the bathroom where Mr. King was actively vomiting and bit into his right shin. The canine latched onto Mr. King and would not release his bite. Mr. King yelled out in pain while Defendant Abdulla commanded Mr. King to come out of the room with his hands up. Mr. King responded that he could not get up and out of the bathroom because of the dog on top of him.

20.     Defendant Abdulla entered the bathroom and pulled the canine off of Mr. King. Blood immediately poured from Mr. King's shin after the dog released its bite. Defendant Abdulla called for an ambulance when he saw Mr. King Bleeding.

21.     An ambulance took Mr. King to Neighborhood Health Medical Center for treatment.

22.     Mr. King had two puncture wounds on the outside of his right calf. The larger of these two puncture wounds needed stiches to close properly. The inside of Mr. King's right calf received four punctures with the largest about an inch in diameter. This large puncture wound also required stiches to close properly.

23.     The dog caused Mr. King to suffer permanent neurological damage in his right leg, for which he now takes daily pain medication.

24.     The canine bite to Mr. King's right shin caused permanent nerve damage and causes Mr. King chronic pain.

25.     Deputy Abdulla interrogated Mr. King in the hospital.  When asked if he was running or hiding from police. Mr. King responded, "No, I would have answered. I can't hear." Defendant Abdulla asked Mr. King if he heard his canine announcements. Mr. King responded, "No." Defendant Abdulla continued to question Mr. King as to why he didn't come out of the bathroom when the deputies were yelling, or if he knew that police were there. Mr. King explained that he did not hear any announcements by the deputies and that he was sitting in the bathroom vomiting and had no idea the police were there until the canine was attacking him.

26.     Defendant Abdulla explained three reasons why he chose to deploy his canine to attack Mr. King. The three reasons were:

   a. The severity of the crime was a Domestic Violence Protection Order Violation.

   b. Mr. King was actively resisting and eluding by not coming out of his room in the basement during announcements.

   c. Mr. King was a threat because Defendant Lopez advised that Mr. King was caught in Denver a week prior with a gun.

27. Regarding the alleged protection-order violation, the Permanent Protection Order that Mr. King was alleged to have violated was entered in the Denver County Court, case number 15W1485.

28. A review of case number 15W1485 specifically states that Mr. King was not present in the courtroom at the December 9, 2015, hearing. In fact, at the time of the December 9, 2015, hearing, Mr. King was an inpatient at Porter Adventist Hospital.

29. Mr. King was never served a copy of the Permanent Protection Order and had no knowledge of the Permanent Protection Order.

30. Mr. King did not commit the crime of Violation of a Protection Order, because he was not served with and had no knowledge of the Permanent Protection Order.

31. Mr. King's warrant for arrest was invalid as it was based upon the crime of violation of a protection order. Mr. King was never served or had knowledge of the Permanent Protection Order and thus could not violate it.

32. Regarding Mr. King's alleged failure to come out of his room, Mr. King was sick with cancer and sitting on the toilet vomiting when the deputies announced themselves at the top of the stairs and at his closed bedroom door. Mr. King was not resisting or eluding the deputies.

He simply did not hear them, a fact which Mr. King reasserted over and over again in his interrogation with Defendant Abdulla in the hospital. Neither Defendant Abdulla nor any other deputy attempted to contact Mr. King once the bedroom door was open and before the canine was sent in to attack Mr. King.

33. Neither Defendant Abdulla nor any other deputy observed any threat to officer safety when the bedroom door was opened.

34. Regarding Mr. King's alleged possession of a firearm, Defendant Lopez's statement to Defendant Abdulla that Mr. King was caught a week ago in Denver with a gun was a false statement. Indeed, as Mr. King had previously been convicted of a felony, any possession of a firearm would have constituted a class 6 felony. *Colo. Rev. Stat.* § 18-12-108. Mr. King was not charged in 2016 of ever being in possession of a firearm.

35. Mr. King was charged with resisting arrest in Adams County and violation of a protection order in Denver County. All of the charges against him were subsequently dismissed by the Denver and Adams County District Attorney's Offices.

## FIRST CLAIM FOR RELIEF
(Excessive Force under Fourth Amendment)

36. Plaintiff incorporates the preceding paragraphs by this reference.

37. Defendant Abdulla acted under color of state law, in his capacity as a Deputy of the Adams County Sheriff's Office, at all times relevant to the allegation in this claim for relief.

38. Defendant Lopez acted under color of state law, in his capacity as a Police Officer of the Denver Police Department, at all times relevant to the allegation in this claim for relief.

39. Defendant Abdulla is a "person" under 42 U.S.C. § 1983.

40. Defendant Lopez is a "person" under 42 U.S.C. § 1983.

41. The deployment of a police dog to apprehend a suspect is governed by a reasonableness standard. The factors involved in that inquiry include the following: (a) the severity of the crime at issue; (b) whether the suspect poses an immediate threat to the safety of the officers or others, and (c) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.

42. Applying these factors to Deputy Abdulla's deployment of the police dog in Mr. King's home yields the following results: (a) Mr. King was alleged to have committed the crime of Violation of a Protection Order with an arrest warrant issued because of this alleged crime, but Mr. King was never served with and had no knowledge of the Permanent Protection Order and thus Mr. King violated no protection order, committed no crime, and the warrant was invalid; (b) Mr. King did not pose an immediate threat to the reporting party or the police officers at the time the police dog was deployed, because the alleged protection-order violation occurred weeks earlier and, at the time of the arrest, Mr. King was in the bathroom sick with stage four colon cancer; and (c) Mr. King was not actively resisting arrest or attempting to evade arrest at the time that the police dog was deployed. Rather, due to the location of the bathroom, and his active vomiting, he simply did not hear or know of the presence of the deputies. Under these circumstances, it was unreasonable for Defendant Abdulla to deploy the canine to bite Mr. King in the bathroom of his bedroom without first attempting to make contact with Mr. King once the bedroom door was open, as nothing in the bedroom indicated any sort of threat towards the deputies.

43. At the time that Defendant Abdulla deployed the police dog, the reasonableness standard was clearly established, such that the deployment of a police dog to apprehend a

suspect, while not a constitutional violation per se, could amount to a federal constitutional violation under circumstances showing that the officer's conduct was not reasonable.

44. The conduct and actions of Defendant Abdulla, acting under color of law, when he commanded his canine to attack Mr. King without alerting or attempting to make contact with Mr. King, once the bedroom door was open, was unconstitutional. Specifically, this conduct of sending the canine to bite Mr. King without trying to make contact once the noise barrier of the bedroom door was down and there was no indication of threat in the bedroom, was excessive and unreasonable, was done intentionally, willfully, maliciously, with a deliberate indifference and/or reckless disregard for the natural and probable consequences of his acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and emotional pain and suffering in violation of Mr. King's rights as guaranteed by 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution, including the right to be free from an unreasonable seizure of his person and the right to be free from the use of excessive, unreasonable, and unjustified force.

45. The conduct and actions of Defendant Lopez, acting under color or law, when he unreasonably mischaracterized Mr. King by providing false information to Defendant Abdulla that Mr. King was caught a week ago in Denver with a gun, was unconstitutional and caused an excessive, unreasonable, and unjustified use of force by Defendant Abdulla. Specifically, this conduct of providing false information to Defendant Abdulla, was excessive and unreasonable, was done intentionally, willfully, maliciously, with a deliberate indifference and/or reckless disregard for the natural and probable consequences of his acts, was done without lawful justification or reason, and was designed to and did cause specific and serious physical and

emotional pain and suffering in violation of Mr. King's rights as guaranteed by 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States

46. Mr. King is entitled to damages to compensate him for his economic and non-economic losses attributable to the violation of his constitutional rights by Defendant Abdulla and Defendant Lopez. In addition, Mr. King is entitled to costs and attorney fees pursuant to 42 U.S.C § 1988 and requests pre-judgment and post-judgment interests as allowed by law.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against the Defendants, and grant:

(a) Appropriate relief at law and equity;

(b) Economic losses on all claims allowed by law;

(c) Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(d) Punitive damages on all claims allowed by law in an amount to be determined at trial;

(e) Attorney's fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

(f) Pre and post-judgment interest at the lawful rate;

(g) Any further relief that this court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF DEMANDS TRIAL TO A JURY.**

Respectfully submitted this 27th day of November, 2017.

                                               THE VIORST LAW OFFICES, P.C.

                                               *s/ Anthony Viorst*
                                               Anthony Viorst, No. 18508
                                               Viorst Law Offices, PC
                                               950 South Cherry Street, Suite 300
                                               Denver, CO 80246
                                               Telephone: (303) 759-3808
                                               Facsimile: (303) 333-7127
                                               E-mail: tony@hssspc.com
                                               Attorney for Plaintiff

**Plaintiff's Address**:
2981 Alder Street
Denver, CO 80260